## Quinlan vs. Pierce and others.

REAL ESTATE: DEED.   (1) *When purchaser chargeable with knowledge of prior deed.*   (4) *Questions not determined.*

JUDGMENT:   (2) *Not reversed when finding of court not against the clear preponderance of evidence.*   (3) *When not rendered against one of several defendants.*

P. and wife, in 1872, conveyed to the town of O. "all the gravel contained in the first stratum of gravel" upon a strip of land described by metes and bounds, part of the N. ½, S. E. ¼ of sec. 1, in said town.   In 1873 they conveyed to plaintiff, by warranty deed, "all of the N. ½ S. E. ¼ of sec. 1, which has [had] not been conveyed to other persons by the grantors."   Afterwards P. and the other defendants, under the direction of the town supervisors and overseers of highways, entered upon said first mentioned strip of land, and removed gravel, etc., therefrom, to be used in improving the highways.   In an action against them for trespass in so doing, *Held,*

Quinlan vs. Pierce and others.

1. That upon the facts shown by the evidence (as to plaintiff's residence in the neighborhood, his familiarity with the use made of the gravel pit by the town before his purchase, the fact that said strip of land was enclosed by a fence so as to be out of the possession of P., and in that of the town, etc.), plaintiff is *chargeable with knowledge* of the existence of the deed of the gravel pit from his grantors to the town.

2. The court below found that the defendants did not remove any more gravel, sand or earth than was conveyed by the terms of said deed to the town. There being *no clear preponderance of evidence* against such finding, this court *cannot reverse it.*

3. After such a finding, judgment cannot be rendered against P. alone, merely upon the ground that *his own testimony* was contrary to such finding.

4. The foregoing considerations being decisive of the appeal, the court declines to decide the following questions raised upon the argument:

(1.) Whether the deed to plaintiff, in view of the *description* therein of the premises conveyed, was in effect only a *quitclaim* deed, though containing full covenants of warranty.

(2.) Whether the provision made in sec. 15, ch. 19, R. S., for determining the damages to the land owner (where overseers of highways have entered upon land and constructed ditches thereon, or removed gravel, etc., therefrom, for the improvement of highways, as provided in sec. 14), is valid.

APPEAL from the County Court of *Winnebago* County.

Trespass, by *Quinlan,* for the alleged digging and taking away of sand and gravel from a gravel bed on plaintiff's premises by *F. O. Pierce,* overseer of highways in district 29, town of Omro, and by the other defendants, who were engaged in graveling the highway under the direction of *Pierce.* On the 1st of June, 1872, one J. C. Pierce, being the owner in fee of the north half of the southeast quarter of section one in the town of Omro, for a valuable consideration, conveyed to the town " all of the gravel contained in the first stratum of gravel " upon a part of this land, twelve rods long by two rods wide, adjacent to and abutting on the highway in road district 29, being the gravel bed in controversy. The land was immediately staked out and fenced, so as to include it in the highway

as a part thereof. The town immediately began taking gravel from the pit, and took away a large portion of the surface during. 1872. On the 10th of April, 1873, J. C. Pierce and wife conveyed to the plaintiff the premises above described, by a deed containing the usual covenants of warranty and seizin, the premises conveyed being described as follows: "All of the N. 1-2 of the S. E. 1-4 of section one, etc., which has not been previously conveyed to other persons by the grantors," etc. *Quinlan* immediately took possession, and afterwards forbade defendants taking earth from the pit. *Quinlan* had lived for five years in the village of Omro, one and a half miles from the gravel pit, and in 1872 had owned land in the immediate vicinity, about half a mile from the Pierce farm, and visited his land nearly every day, and occasionally went past the gravel pit. He testified, however, that he had no knowledge that the town had any claim on the gravel pit, except that he saw a boy on the road with gravel, and was told by him that he got it at Pierce's. Lamphier, chairman of the board of supervisors of the town, testified that *Quinlan* was present at the gravel pit when the bargain was made with J. C. Pierce to sell to the town, and that while all were there together, the distance was measured out and staked off. The evidence was exceedingly conflicting as to whether the town authorities had taken gravel from the pit below the stratum or layer which was conveyed to the town. *Quinlan* testified that they took both above and below the layer of gravel, and were taking from below it when he forbade them taking more. Upon this point his testimony was corroborated by that of Shufelt and the defendant *F. O. Pierce*, the latter testifying that the greater part of the earth was taken from below the layer of gravel. This evidence was directly contradicted by Lamphier and Hotchkiss, two of the town supervisors who made the purchase of the gravel pit, and by the defendant *Bradley*, who was the overseer of highways in 1872, and who drew gravel from the pit in 1873. The court found as facts that the gravel taken by defendants was taken

from the first stratum of gravel in the strip of land in question, and that this strip of land was never conveyed to *Quinlan*, except subject to the interest of the town of Omro under the conveyance to it of June 1, 1872, and subject to the right of the town to remove gravel therefrom. As conclusions of law, the court held that defendants were employees of the town of Omro, acting under the direction of the supervisors, with the right to remove gravel from the first stratum of the strip of land in question; that they were not trespassers; and that plaintiff had no cause of action against either of the defendants. Judgment for defendants for costs; and plaintiff appealed.

*A. K. Brush*, for appellant, argued, *inter alia*, that when a trespass is proven or admitted, nominal damages follow as of course. *Babb v. Macey*, 10 Wis., 376, 377. A party to a suit is bound by his own admission, under oath, against himself; and *F. O. Pierce*, upon his own testimony, had committed a trespass by taking gravel from below the stratum conveyed, and judgment should have gone against him at least.

*Finch & Felker*, *contra*, contended that the evidence warranted the court in finding that *Quinlan* purchased with sufficient knowledge of the rights of the town to put him on inquiry. The exception in the deed to *Quinlan* covered the *locus in quo*, and in connection with the evidence showed knowledge of the interest of the town on the part of plaintiff when he purchased. *Thorndyke v. Barrett*, 2 Me., 312. The fencing of the land by the town, and hauling away of gravel, were sufficient notice to put plaintiff upon inquiry, being actual possession under an unrecorded deed. *Stewart v. McSweeney*, 14 Wis., 468; *Bull v. Bell*, 4 Wis., 54.

DIXON, C. J. Counsel for the defendants insist that the deed of the land in controversy from *Pierce* and wife to the plaintiff, although in the common form of a warranty deed with the usual covenants of warranty and seizin, in law amounts to no more than a quitclaim, because the words of description are,

"all of the north half of the southeast quarter of section one *which has not been previously conveyed* to other persons by the grantors."

It is also insisted by the same counsel, that the defendants were at all events justified in entering upon and removing the gravel from the land of the plaintiff under and by virtue of sections 14 and 15, ch. 19, R. S.; Tay. Stats., 481, §§ 18, 19. Section fourteen reads as follows: "It shall be lawful for any overseer of highways, or any person acting under his direction, to enter upon any lands adjoining to or near the highway in his district, to construct such drains or ditches as may be necessary for the improvement or preservation of such highways; and any such overseer, or the persons as aforesaid, may enter upon any unimproved lands adjoining to or near the highway in his district, and gather or dig any stones, gravel or sand, and cut any wood or trees, and take away the same, for the purpose of making or improving such highway." Section fifteen is in these words: "If any owner or occupant of lands so entered upon for any of the purposes mentioned in the preceding section, shall feel himself aggrieved, he may apply to the supervisors of the town, who shall appoint three disinterested electors of such town to appraise the damage; and such electors, being first duly sworn justly and impartially to appraise the damages done upon such lands, shall proceed to estimate the same; and the damages, if any, allowed by them shall be certified under their hands, and the same shall be audited by the town board and paid out of the town treasury," etc.

The questions thus presented involve considerations of very considerable delicacy and importance, the former as to the proper construction of the deed, and the latter in a constitutional point of view, respecting the validity of the method prescribed for ascertaining the damages sustained by the land owner. It is no cause of regret on our part that the facts of the case before us are otherwise such as to relieve us from the necessity of determining these questions.

We are satisfied from the evidence that the plaintiff, at the time of purchasing the land in question, had or ought to have had knowledge of the existence of the prior deed conveying the gravel pit by his grantors to the town of Omro. If he had not such knowledge, he had notice of facts which should have put him upon inquiry, which, if properly pursued, would have led to such knowledge. In support of this conclusion we refer to the evidence of the plaintiff's residence in the neighborhood, his familiarity with the road and the gravel pit, his knowledge of the use that had been made of the gravel in 1872 to repair the road passing his own farm, the information he received from the boy respecting the place where the gravel for the road was obtained, and his presence at the place on one or two occasions while the work was going on, and the fact that the gravel pit, or strip of land adjoining the highway from which the stratum of gravel was conveyed to the town, was fenced out into the highway so as to be out of the possession of Pierce, the grantor, and in that of the town, and so as to be accessible to the overseer of highways and officers of the town for the purpose of removing the gravel which the town had purchased. All these were significant facts and circumstances to show knowledge of the prior conveyance on the part of the plaintiff; and we think he had it; and, having such knowledge, he of course purchased subject to all the rights of the town to enter and dig and remove the gravel, according to the deed.

The foregoing fact being established, the remaining question to be considered is, whether the evidence shows that the defendants took and removed more gravel, sand or earth than by the deed was conveyed to the town. Upon this point there is a conflict of testimony; but we are of opinion that the preponderance is with the defendants, and sustains the finding of fact made by the court below.

On the part of the plaintiff is the testimony of himself, Shufelt and defendant *Pierce*, that earth and sand were removed from below the stratum of gravel. On the part of the defend-

ants, the witnesses Lamphier, *Bradley* and Hotchkiss testify that there was no such removal, but that the excavation extended only to the bottom of the gravel or stratum which was conveyed.   Under such circumstances, and with no other light than we possess, we can only affirm the finding of the county court, which seems to us to be in accordance with the weight of the testimony.   It must be a much clearer case than this to justify the reversal of a finding by the judge before whom the cause was originally tried.   *Murphy v. Dunning,* 30 Wis., 296.

It is suggested that judgment should, at all events, have been rendered against the defendant *Pierce,* who testified to the excavation and removal of sand beyond the depth of the gravel described in the deed, and purchased by the town.   It would be very difficult for the court to assess damages against this one defendant for such excavation and removal, when it found from the whole evidence that no excavation or removal of the kind was made.

*By the Court.*— Judgment affirmed.