LAMOREUX, Appellant, vs. HUNTLEY, Administrator, etc., and others, Respondents.

*December 21, 1886 — January 11, 1887.*

*(1) Mortgage: Tax deed and quitclaims taken as security. (2) Bona fide purchaser: Quitclaim. (3) Evidence: Declarations as to title. (4) Landlord and tenant: Notice of application for tax deed. (5) Possession of land: Notice to purchaser.*

1. A. purchased land, taking title to a part thereof in his son's name. B. obtained a tax title to that part which was in the name of A., and afterward quitclaimed to C., who quitclaimed to D. A.'s son also quitclaimed to D. The evidence is *held* to warrant a verdict to the effect that D. took and held the title merely as security for advances made to A. or for his benefit.

2. While so holding title to the land D. quitclaimed to E. and afterwards, with the knowledge of E., had a settlement with A. and conveyed the land to F. for the benefit of A. It did not appear that there was any consideration for the quitclaim deed to E., and that deed was not recorded until long after the conveyance to F. A. remained in the actual possession of the land all the time. In an action brought by the successor to E.'s title against the heirs of A. it is *held* that E. was not a *bona fide* purchaser, and that he and his grantees were bound by the transactions between D. and A.

3. In such action the declarations of A., made while he was in possession, as to his ownership and the nature of his possession, and the declarations of D., made after he had quitclaimed to E. and after A. had notice of that fact, were admissible in evidence on the part of the defendants.

4. The fact that notice of the application for a tax deed was served upon the person in possession of land is strong evidence that he

was not in possession as a tenant of the holder of the tax certificate, as in that case no notice would be necessary.

5. Actual possession of land is notice to a purchaser of the rights of the occupant, unless the purchaser derives his title from or through such occupant.

APPEAL from the Circuit Court for *Portage* County.

Ejectment. The action was brought by *Charles A. Lamoreux* against *Charles Myers*, the son, *Eliza Myers*, the widow, and *Frederick Huntley*, the administrator of the estate of J. L. Myers, deceased. The facts are stated in the opinion. The jury found a special verdict substantially as follows: (1) The plaintiff was not, at the time of the commencement of the action, the owner or entitled to the possession of the land in question; (4) J. L. Myers did not, at the time of his death, occupy or hold the land in question as tenant of O. H. Lamoreux or his grantors; (6) O. H. Lamoreux took the title to the lands from the McDills and C. C. Myers at the request of J. L. Myers, (7) under an agreement with the latter that he would hold such title as security for money then advanced for, or previously owing to him from, said J. L. Myers; (8, 9) in December, 1869, the said indebtedness from J. L. Myers to O. H. Lamoreux was settled and discharged by Lamoreux deeding the land in controversy to Herren, at the request and for the benefit of Myers, and by retaining to himself as owner, with Myers' consent, the balance of the lands deeded by the McDills and C. C. Myers.

From the judgment in favor of the defendants the plaintiff appealed.

For the appellant the cause was submitted on the brief of *Raymond & Haseltine*. They contended, *inter alia*, that it was error to admit evidence of the declarations of J. L. Myers that Lamoreux's interest in the place was only by virtue of some tax certificates he had, or that he and Lamoreux had settled up the farm business and were square

now, he taking the north half and giving Lamoreux the south half. While it is allowable to prove the statements of one in possession and explanatory thereof, it is not permissible to show everything that may have been said by him in respect to the title, as to how, when, or from whom the title was acquired. *McBride v. Thompson*, 8 Ala. 650; *Abney v. Kingsland*, 10 id. 355; *Rowland v. Boozer*, id. 694; *Scott v. Dansby*, 12 id. 719; *Thompson v. Mawhinney*, 17 id. 362; *Allen v. Prater*, 30 id. 460. It was also error to admit the acts and declarations of O. H. Lamoreux, done and made after his conveyance to W. O. Lamoreux. It appears that Myers was informed that he had so conveyed prior to the alleged settlement and division of the farm. Such being the case no settlement could bind W. O. Lamoreux and his grantees. It was also error to admit the declarations of O. H. Lamoreux after he had parted with his title to the lands and was not in possession thereof. *Padgett v. Lawrence*, 10 Paige, 170; *Felder v. Bonnett*, 2 McMullen's Law, 44; *Settle v. Alison*, 8 Ga. 201; *Gill v. Stroizier*, 32 id. 696; *Sharp v. Wickliffe*, 3 Litt. 10; *Barrett v. French*, 1 Conn. 354; *Pettibone v. Phelps*, 13 id. 450; *Reichart v. Castator*, 5 Binn. 109; *Brashear v. Burton*, 3 Bibb, 9; *Bogert v. Phelps*, 14 Wis. 88; *Welch v. Sugar Creek*, 28 id. 618; *Bates v. Ableman*, 13 id. 644; *Fay v. Rankin*, 47 id. 400.

For the respondents there was a brief by *Cate, Jones & Sanborn*, and oral argument by *Mr. Jones*. To the point that the declarations of J. L. Myers were admissible for the purpose of showing that he claimed the land in his own right and not as the tenant of Lamoreux, they cited *Kelly v. Kelly*, 20 Wis. 443; *Meade v. Black*, 22 id. 241; *Roebke v. Andrews*, 26 id. 311; *Gill v. Crosby*, 63 Ill. 190; *Whitaker v. Wheeler*, 44 id. 440; *Williamson v. Williams*, 11 Lea, 355; *Sweltenham v. Leary*, 18 Hun, 284; *Sutton v. Cassellegi*, 5 Mo. App. 111; *Dodge v. Freedman's S. & T. Co.* 93 U. S. 379; *Hunt v. Haven*, 56 N. H. 87; *Yates v. Yates*, 76 N. C.

142; *Thomas v. Wheeler,* 47 Mo. 363; *Keator v. Dimmick,* 46 Barb. 158; *Abend v. Mueller,* 11 Ill. App. 257.

TAYLOR, J.   This is an action of ejectment to recover the possession of five forty-acre tracts of land, less about eighteen acres off the south side of the tract.   On the trial the evidence showed that J. L. Myers, the deceased, had purchased from the government all the lands in question, except two forty-acre tracts, and that these two tracts were purchased from the government in the name of his son, C. C. Myers, but with the money and for the benefit of J. L. Myers, deceased.   The record does not disclose that J. L. Myers, so far as the lands in controversy are concerned, ever conveyed the title he procured from the government to any other person.   As to the two forty-acre tracts purchased by C. C. Myers, the record discloses that he conveyed said tracts to O. H. Lamoreux on the 27th of January, 1868, and that afterwards, and on the 11th day of December, 1869, O. H. Lamoreux and wife conveyed all the lands in question to one Ashebel Herren, a relative of said J. L. Myers; and the defendants claim that this deed was made to said Herren for the use and benefit of the said deceased; that the de-deceased went into the actual possession of these tracts of land as early as 1854, and continued in the actual possession thereof until his death in 1884.

The plaintiff, to establish his title to said lands, introduced a tax deed for all of said lands, except the two forty-acre tracts entered by C. C. Myers, from Portage county to one James Scott, bearing date May 28, 1864; a quitclaim deed from James Scott to McDill, dated November 1, 1866; a deed from McDill and wife to O. H. Lamoreux, dated January 27, 1868; a deed from C. C. Myers to said O. H. Lamoreux for the two forty-acre tracts above mentioned, dated January 27, 1868; a quitclaim deed from O. H. Lamoreux and wife to his son W. O. Lamoreux, dated April 7, 1869,

but not recorded until April 12, 1871, of all the lands in controversy; a quitclaim deed from W. O. Lamoreux to F. B. Lamoreux, dated July 6, 1874, of all the lands; a quitclaim deed from F. B. Lamoreux to the plaintiff, bearing date August 5, 1884. Plaintiff also offered a tax deed from Portage county to W. O. Lamoreux, dated June 11, 1872, and recorded on the same day.

There is no claim of title made by the plaintiff under this last tax deed, as it was clearly barred by the three-years statute of limitations, which was pleaded as a defense to such deed in the answer of the defendants. Upon the record evidence, the only title shown in the plaintiff was based on the tax deed to Scott in 1864, and deed of the two forty-acre tracts by C. C. Myers to O. H. Lamoreux in 1868; and if the deed from O. H. Lamoreux to Ashebel Herren, made December 11, 1869, for the benefit of J. L. Myers, deceased, is to have precedence over the deed by O. H. Lamoreux to his son W. O. Lamoreux, made April 7, 1869, but not recorded until 1871, then the plaintiff has failed to show a legal title to any part of the lands in dispute.

On the trial it was contended, on the part of the defendants and respondents, that O. H. Lamoreux held the title to all the lands in question in 1869, when he conveyed to W. O. Lamoreux, as security for the money he advanced to the McDills for the conveyance from them to him in 1868, and perhaps for some other money advanced to J. L. Myers by said O. H. Lamoreux. This was in fact the main question litigated on the trial, and upon this question the jury found in favor of the defendants. After a careful consideration of the evidence, it would seem the finding of the jury on this point is well supported by the evidence. Scott and McDill both testified on the trial that, when they held the title under the tax deed, they held it as security for the moneys advanced by them to procure the title, and for taxes paid by them on the lands at the request of J. L. Myers.

McDill also testified that he deeded the lands to O. H. Lamoreux at the request of J. L. Myers, and that all the consideration he received for such conveyance was the sum Myers owed McDill. If Scott, the McDills, or O. H. Lamoreux obtained any title to the lands in controversy under the tax deed to Scott, such title must have been obtained by virtue of some arrangement with J. L. Myers. Without the assent of Myers, neither of them would have obtained any title by virtue of said tax deed, as all the evidence shows that J. L. Myers was in the actual possession of the lands when the deed was issued in 1864, and remained in such actual possession from that time until his death in 1884, as to the lands in controversy in this action. Under this state of the evidence, the tax deed would show no title in Scott or his grantees; had the statute of limitations been pleaded as to that tax deed. Whether the statute is sufficiently pleaded in this case need not be determined. It is quite clear that Myers retained some interest in the lands, or had some claim of title thereto, at the time O. H. Lamoreux conveyed the lands to W. O. Lamoreux. The appellant claims that at that time J. L. Myers was in possession as the tenant of O. H. Lamoreux, and the defendants claim that he was in possession as the owner of the title, subject to the mortgage claim of O. H. Lamoreux.

There is one piece of evidence in the case which does not rest in the mere memory of the witnesses, viz., the notice served upon J. L. Myers in 1872, by William O. Lamoreux, upon his application for a tax deed on tax certificates issued in 1867. Now, if J. L. Myers was in possession of those lands in 1872 as the tenant of O. H. Lamoreux or W. O. Lamoreux, as now claimed by them, there would have been no necessity of giving notice to him in order to make their tax deed valid. In order to acquire a tax deed, no notice to the person in possession of the land is required when the person in possession is holding under the person owning the

tax certificate. See sec. 1175, R. S. 1878. The service of this notice is strong evidence that W. O. Lamoreux did not consider J. L. Myers as his tenant of the premises in 1872, but as holding the possession under a claim of title adverse to him.

The jury having found that O. H. Lamoreux's interest in the land in controversy was only a mortgage interest when he conveyed to W. O. Lamoreux in 1869, W. O. Lamoreux took no greater interest in the land than his grantor had therein. J. L. Myers being in the actual possession at the date of the deed to W. O. Lamoreux, and the title conveyed not being derived directly from J. L. Myers as the original owner, W. O. Lamoreux, as the grantee of O. H. Lamoreux, was bound to take notice of the right of J. L. Myers, who was in the possession of the lands at the date of the convey ance. Had O. H. Lamoreux derived his title to the lands in controversy by a conveyance from J. L. Myers, the mere fact that Myers remained in possession after he had conveyed away his title might not of itself have been notice to O. H. Lamoreux's grantee that he had any claim to the lands adversely to his grantee, O. H. Lamoreux.

The record evidence not showing any title in O. H. Lamoreux derived from J. L. Myers, and the evidence showing an actual possession by J. L. Myers at the date of the conveyance of O. H. Lamoreux to W. O. Lamoreux, W. O. Lamoreux took the title subject to any valid claim which J. L. Myers had to the same, and his possession was sufficient notice to him of his claim. See *Bull v. Bell*, 4 Wis. 54; *Wicke v. Lake*, 21 Wis. 410; *S. C.* 25 Wis. 71; *Quinlan v. Pierce*, 34 Wis. 304; *Ely v. Wilcox*, 20 Wis. 523; *Fery v. Pfeiffer*, 18 Wis. 510; *Cunningham v. Brown*, 44 Wis. 72; *Thrall v. Thrall*, 60 Wis. 503; *Gee v. Bolton*, 17 Wis. 604; *Stewart v. McSweeney*, 14 Wis. 468; *Warner v. Fountain*, 28 Wis. 405; *Ehle v. Brown*, 31 Wis. 405; *Brinkman v. Jones*, 44 Wis. 498; *Bergeron v. Richardott*, 55 Wis. 129.

It is insisted on the part of the appellant that even if it should be held that the evidence shows that the title taken by O. H. Lamoreux from the McDills was taken as security, and was in the nature of a mortgage, the verdict should have been in favor of the appellant upon the ground that a new arrangement was made between O. H. Lamoreux and J. L. Myers, the deceased, by virtue of which Myers abandoned all claim to the land, except that he was to occupy the same as tenant for life at a mere nominal rent. A very large part of the evidence introduced on the part of the appellant was directed to this question; and it was testified to by several of the appellant's witnesses that the deceased had frequently declared that he was in possession as the tenant of O. H. Lamoreux, or, of his grantee, W. O. Lamoreux. On the other hand, the defendants produced evidence strongly tending to show that in 1869 O. H. Lamoreux and the deceased had a settlement of all their matters, and on such settlement the large farm of 520 acres' was divided, and the south half was surrendered to O. H. Lamoreux, who took possession thereof and has since held the same, and that upon such division O. H. Lamoreux conveyed the north half of the farm to one Ashebel Herren, a relative of J. L. Myers; that said conveyance was made to said Herren for the benefit of and was delivered to said Myers; and that since said conveyance the deceased occupied said north half of the farm, claiming to own the same in fee, and O. H. Lamoreux, or those claiming under him, occupied the south half thereof, claiming to own the same.

Upon this question the jury have also found in favor of the defendants, and upon evidence which we think fully justifies the finding. The fact of giving the deed to Herren by O. H. Lamoreux at the request of and for the use of Myers is very strong evidence against the claim now made by the appellant. Had the deed been given directly to Myers, it would have been in itself almost conclusive evi-

dence against the claim made by the appellant. It seems almost incredible that O. H. Lamoreux should have made a deed conveying the fee of the lands to Myers, or to another for his benefit, when it was intended that it should only convey a life-interest or no interest at all. The inherent improbability of the transaction being of the nature now claimed by the appellant, together with the other evidence in the case, was a sufficient justification for the verdict of the jury that there was no tenancy in fact, and that the transaction was a full settlement of all claims on the part of O. H. Lamoreux to the lands in controversy. Had the deed been to Myers himself, we think all this evidence, tending to show by parol that the deed was in fact only a life-lease, would have been wholly incompetent and inadmissible. Whether it was inadmissible in the case at bar we are not called upon to determine, as the jury have found against the appellant's claim.

It is urged that the deed by O. H. Lamoreux, made in 1869 to Herren, and any arrangement then made by him with Myers, should not bind the plaintiff. We think that the evidence fails to show that W. O. Lamoreux or those claiming under him are *bona fide* purchasers without notice of the claim of Myers. On the other hand, we think the fact that they take their title by quitclaim deed without showing that there was in fact any consideration for such conveyance, the fact that the deed to W. O. Lamoreux was not recorded until two years after it purports to have been executed, and the fact that O. H. Lamoreux did all the negotiations with Myers in regard to this land after his conveyance to W. O. Lamoreux, with the knowledge of said W. O. Lamoreux, justify the conclusion that O. H. Lamoreux was in fact the real party interested in this land, and his acts must be held to bind the parties claiming under the deed from him to W. O. Lamoreux. See *Martin v. Morris,* 62 Wis. 418, 428.

Lamoreux vs. Huntley, Adm'r, etc. and others.

In this view of the case, the court did not err in not treating W. O. Lamoreux as an innocent purchaser without notice of the claims of Myers; nor did the court err in refusing to instruct the jury that W. O. Lamoreux could not be bound by the transactions between the deceased and O. H. Lamoreux unless he had actual notice of the claim of Myers, the deceased. Upon all the evidence, we think there was no error in admitting in evidence the declarations of O. H. Lamoreux, after he had conveyed the premises to W. O. Lamoreux, and after Myers had actual notice of that fact, if the evidence shows he had such notice. We think the whole evidence shows that the title held by W. O. Lamoreux was held for the benefit of O. H. Lamoreux, or, if not so held, W. O. Lamoreux permitted O. H. Lamoreux to deal with it as though held for his benefit, and sanctioned what was done by him in regard to it.

The objections to the evidence of the declarations of the deceased as to his ownership of the land, made while he was in possession of the same, and that he was not holding possession as tenant of the grantor of the plaintiff, we think were properly overruled. The evidence was admissible under the rule laid down by this court in the cases of *Kelley v. Kelley,* 20 Wis. 443; *Meade v. Black,* 22 Wis. 241; *Roebke v. Andrews,* 26 Wis. 311,— as well as by the cases cited by the late Justice PAINE in his opinion in the case last above cited.

The case seems to have been fairly tried upon both sides, and the verdict of the jury is fully sustained by the evidence, and we find no errors in the record which would justify a reversal of the judgment.

*By the Court.*— The judgment of the circuit court is affirmed.